UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Dorothy L. Stafford

    v.                                                Civil No. 17-cv-345-LM
                                                      Opinion No. 2018 DNH 123
Nancy A. Berryhill, Acting
Commissioner of Social Security

**O R D E R**

Dorothy L. Stafford seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits. Stafford moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm. For the following reasons, the Acting Commissioner's decision is vacated and remanded.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831

F.3d 31, 34 (1st Cir. 2016). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, id. § 404.1545(a)(1), and her past relevant work, id. § 404.1520(a)(4)(iv)). If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled. See id. If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five, in which the ALJ

has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment. See id. § 404.1520(a)(4)(v).

## BACKGROUND[1]

In April 2014, Stafford applied for disability insurance benefits. Concurrently, Stafford applied for Supplemental Security Income ("SSI") benefits. Stafford claimed a disability that began on December 31, 2008, the date last insured.[2] As of the date last insured, she was 40 years old, had a high school education with two years of college, and had specialized training as a certified nurse's aide. Stafford had previously worked as an administrative assistant, health care aide, nanny, and preschool teacher. Stafford alleged that she was disabled because of Type I diabetes, Charcot foot conditions, peripheral neuropathy of the hand and foot, depression, sacroiliac joint inflammation, acid reflux disease, and high blood pressure. Stafford alleged that, since April 2003, she was only able to

---

[1] A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 14).

[2] "Date last insured refers to the date before which the plaintiff must prove disability in order to be eligible for disability benefits." Schupp v. Barnhart, No. 3:02CV103, 2004 WL 1660579, at *2 n.2 (D. Conn. Mar. 12, 2004) (citing applicable statutes and regulations).

3

work part-time as a result of her impairments, which she continued to do until April 2014.

During initial review, the Social Security Administration granted Stafford SSI benefits but not disability insurance benefits. The stated reason was that, while Stafford was disabled as of her application date (April 2014), there was insufficient evidence to determine whether she was disabled as of her date last insured (December 2008). Stafford sought a hearing before an ALJ on her application for disability insurance benefits.

I. Hearing & Record Evidence

On April 20, 2016, a hearing before an ALJ was held. Stafford was represented by an attorney and testified at the hearing. Howard Steinberg, a vocational expert, appeared and testified by phone.

At the hearing, Stafford testified about the conditions that prevented her from working in late 2008. She alleged that she had (1) extreme fatigue, both from her impairments and medications; (2) lower back and foot pain that prevented her from sitting for more than thirty minutes; (3) poor focus and general unreliability as a result of the variability in her blood sugar levels; and (4) a need to lie down intermittently

4

during the day.  Stafford also discussed, in general terms, her lifestyle and ailments in and around 2008.

Stafford's medical records from 2008 to 2010 shed more light on her conditions from that period.  The court need not explain these records in detail; it suffices to say that they arguably show that, with the aid of physical therapy and medication, Stafford had greater abilities to work, engage in daily life activities, and physically exert herself than she described at the hearing.

The record also contains a number of opinions from medical sources.  Two non-examining state agency consultants provided opinions as to Stafford's functional capacity.  Michael Schneider, Psy. D., examined Stafford's alleged mental impairments as of the date last insured but determined that there was insufficient evidence to assess her claim.  Similarly, Hugh Fairley, M.D., reviewed Stafford's claim and found that, while she was disabled as of 2014 due to diabetic neuropathy and degenerative disc disease of the lumbar spine, he did not have sufficient medical evidence to evaluate whether she was disabled as of her date last insured.

There are also three opinions provided by treating health professionals.  Two podiatrists, Billie Bondar and Kevin Riemer, as well as one medical doctor, Nicole Warren, provided functional assessments in April 2016.  Each of these treating

sources provided the assessment on a boilerplate form titled "Physical Impairment Medical Source Statement." Admin. Rec. at 1967.

Bondar stated that he had been treating Stafford for "foot concerns" every one to two years since 2003. Id. Bondar diagnosed Stafford with diabetic neuropathy of the feet, hammertoes, and ingrown toenails. In response to the question "Have the impairments you assessed in this questionnaire existed since 12/31/08?", Bondar stated "some, not all," and later clarified that he believed Stafford's neuropathy had existed since 2003. Id. at 1967-68. Regarding her functional capacity, Bondar stated, among other things, that Stafford could sit for forty-five minutes at a time and would need to walk about ten minutes every ninety minutes.

Riemer, the second podiatrist, diagnosed Stafford with Charcot neuroarthropathy. He stated that it was "unknown" whether the impairments had existed since the date last insured. Id. at 1972. Riemer opined that Stafford's pain and other symptoms would frequently interfere with her attention and concentration, that she could stand less than two hours in an eight-hour workday, that she would need to use a cane or other assistive device when standing or walking, and that she would need to miss about four days per month due to her impairments.

6

Dr. Warren, the third treating source, practices at Great Works Family Practice, where Stafford has been a patient since 2009. Dr. Warren diagnosed Stafford with Type I diabetes, neuropathy, chronic back pain, depression, and hypertension. Dr. Warren states that Stafford has had moderate to severe neuropathic pain in her extremities daily as a result of her diabetes. In response to the question "Have the impairments you assessed in this questionnaire existed since 12/31/08?", Dr. Warren checked the "Yes" box. Id. at 2082. As to Stafford's functional abilities, Dr. Warren opined that Stafford's pain and symptoms would constantly interfere with her attention and concentration, that Stafford would need to walk ten minutes every hour during the workday, that she would need to elevate her legs to the level of her heart 33% of the workday, and that she would need to take unscheduled breaks during the workday. Dr. Warren also opined that Stafford had significant limitations with reaching, handling, or fingering, could only grasp, turn, and twist objects for 33% of the day, could only use her fingers for fine manipulations 10% of the day, and could only use her arms for reaching 33% of the day.

II. ALJ's Decision

The ALJ issued his decision in May 2016. At step one, the ALJ found that Stafford had not engaged in substantial gainful

7

activity on the date last insured.  The ALJ then found that Stafford had severe impairments of Type II diabetes with peripheral neuropathy, and degenerative disc disease of the lumbar spine.  At step three, the ALJ found that Stafford's impairments did not meet or equal a listed impairment.

At step four, the ALJ concluded that, on the date last insured, Stafford had the residual functional capacity to perform a limited range of sedentary, unskilled work.  In reaching his conclusion, the ALJ heavily relied on his personal assessment of Stafford's medical records from 2008 to 2010.  He afforded "little weight" to the opinions of Bondar, Riemer, and Dr. Warren.  Id. At 20.  He reasoned that "these assessments . . . relate to a time period more than seven years after the date last insured," which "severely reduces the reliability of their opinions for the period under review before me."  Id.

Based on these findings, the ALJ determined that, while Stafford could not have performed her past relevant work in 2008, there were jobs that existed in significant numbers in the national economy that Stafford could have performed.  Therefore, the ALJ found that Stafford was not disabled within the meaning of the Social Security Act.  The Appeals Council denied Stafford's request for review, making the ALJ's decision the Acting Commissioner's final decision.

8

**DISCUSSION**

On a number of grounds, Stafford challenges the ALJ's decision. However, because it is dispositive, the court need only address one of Stafford's arguments. Stafford contends that the ALJ failed to provide good reasons for rejecting the opinions of Stafford's treating sources—Bondar, Riemer, and Dr. Warren. The Acting Commissioner responds that the ALJ reasonably rejected these opinions because they did not relate back to the date last insured.

"An ALJ must give a 'treating source's' opinion 'controlling weight' if that opinion is well-supported and consistent with substantial evidence." Packer v. Berryhill, No. 17-cv-260-PB, 2018 WL 2426664, at *4 (D.N.H. May 30, 2018) (quoting 20 C.F.R. § 404.1527(c)(2)). "[I]f the ALJ rejects the opinion of a treating source, the ALJ must give good reasons for his determination, which must be both specific and supportable." Id. (internal quotation marks omitted); see also Widlund v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *9 (D.N.H. Apr. 16, 2012) (stating that an ALJ must "offer a rationale that could be accepted by a reasonable mind"), R & R approved by 2012 WL 1676984 (May 14, 2012). "[W]here no such specific reasons are given, remand is appropriate if the failure renders meaningful review impossible." Kenerson v. Astrue, No. 10-cv-

161-SM, 2011 WL 1981609, at *4 (D.N.H. May 20, 2011) (internal quotation marks omitted).

Here, the ALJ rejected the opinions of Bondar, Riemer, and Warren because their assessments "relate to a time period more than seven years after the date last insured." Admin. Rec. at 20. On its face, this rationale appears to conflict with the assessments themselves. In her assessment, Dr. Warren answered "Yes" to the question "Have the impairments you assessed in this questionnaire existed since 12/31/08?" Id. at 2082. Similarly, Bondar stated that "some, not all" of the impairments existed since the date last insured, and he later clarified that Stafford's neuropathy had existed since 2003. Id. at 1967-68. By contrast, Riemer stated that it was "unknown" whether Stafford's impairments had existed since the date last insured. Id. at 1972. Thus, at least with respect to Dr. Warren's and Bondar's opinions, there is language suggesting that the functional limitations described in the assessments relate back to the date last insured. Given that, the ALJ's stated rationale for rejecting them is insufficient. See Kline v. Colvin, No. 12-1136, 2013 WL 3815876, at *5 (D. Kan. July 22, 2013) (where medical source statement noted that limitations existed prior to date last insured, ALJ's rejection of statement on basis that it related to limitations after date last insured

10

was erroneous "on its face"); Whitehead v. Astrue, No. 11-11292, 2012 WL 5921045, at *6 (D. Mass. Nov. 26, 2012) (upholding ALJ's decision to afford little weight to medical opinions on the basis that they did not relate back to date last insured, where the opinions were worded "in the present tense <u>without any retrospective component</u>" (emphasis added)).

The Acting Commissioner points out that, on the "Medical Source Statement" forms, the questions relating to Stafford's functional limitations were generally worded in the present tense, from which it could be inferred that the opinions of Stafford's treating sources were confined to the present timeframe. But at best, that fact merely created an ambiguity, one which the ALJ should have identified and resolved. Looking at his decision, it appears that he simply ignored the issue. That constitutes error. See Bell v. Astrue, No. 11-cv-45-PB, 2012 WL 124841, at *9 (D.N.H. Jan. 17, 2012) ("Although conflicts in the evidence are for the ALJ to resolve, the ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause." (citation omitted)). Moreover, the Acting Commissioner does not argue—and the court is not prepared to find—that this error was harmless.

Accordingly, the court concludes that the ALJ failed to provide sufficient reasons for rejecting the opinions of

Stafford's treating sources.  The case must be remanded for further proceedings.[3]

**CONCLUSION**

For the foregoing reasons, Stafford's motion to reverse (doc. no. 10) is granted, and the Acting Commissioner's motion to affirm (doc. no. 15) is denied.  The court vacates the Commissioner's decision and remands the matter for further proceedings.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 18, 2018

cc: Terry L. Ollila, Esq.
    T. David Plourde, Esq.
    D. Lance Tillinghast, Esq.

---

[3] Because Riemer opines that it is "unknown" whether Stafford's impairments existed since the date last insured, it could be argued that his opinion cannot be said to relate back to that period.  Given that the case will be remanded regardless, and in light of the district court's limited role in this context, the court considers it appropriate to have the ALJ make any such determination in the first instance.